UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
                Plaintiff

v.                                          Case No. 8:24-CR-347-WFJ-SPF

OMAR PITTER,
                Defendant
_____/

ORDER DENYING MOTION TO SUPPRESS

This matter comes before the Court on Omar Pitter's motion to suppress, Dkt. 265.  The Government filed a response. Dkts. 266, S-267.  The Court denies the motion.

*BACKGROUND*

Pitter's motion seeks to suppress the search of his residence and the fruits thereof.  Pitter resided in California.  There there were two search warrants directed to California premises, and Pitter is unclear as to which address he seeks suppressed.  It appears from the context of the motion he seeks suppression of the search at 1281 9th Avenue N., Apt. 601, San Diego, Ca. 92101.  The search warrant, issued by a S.D. Cal. U.S. Magistrate Judge, and affidavit/application are found at

Dkt. S-267-1. This search warrant issued and was executed in August 2024, concurrent with Pitter's arrest in this case.

The gist of the motion is found at Dkt. 265 at 4. Pitter states that the search warrant affidavit does not establish probable cause. He notes that the affidavit was based upon a codefendant Goslin's identification of him. Goslin was a cellmate in federal prison with Pitter, and in the instant case Pitter has served as the Goslin's source of supply. Codefendant Goslin identified a drivers license photo for one Wayne Hammond, and the picture was of Omar Pitter. This was a false license used by Pitter. Besides identifying "Omar" as his source of supply in this case, Goslin also consented to the search of his eight telephones, which yielded inculpatory chats and discussions with Pitter about the present case. *Id.*

According to the motion, this information in the warrant was too skimpy to support probable cause to search his apartment. Pitter states that "it is quite clear that the government did not have probable cause or reasonable suspicion to believe that criminal activity was afoot in Pitter's residence and therefore there was no justification or probable cause to search Pitter's residence." *Id.* at 6.

The motion does not request a hearing, evidentiary or otherwise, or state grounds for one. *See* M. D. Fla. R. 3.01(h) ("A party must request oral argument or an evidentiary hearing in a separate document accompanying the party's

motion….").  The motion also does not touch upon the search warrant "good faith exception."  *See generally, United States v. Leon,* 468 U.S. 897, 913 (1984).

The Government, in response, argues that the application and warrant were proper.  Dkt. 266.  Further, the Government stresses the "good faith exception" of *Leon, supra,* noting that evidence will not be suppressed if law enforcement "reasonably rel[ied] on a warrant issued by a detached and neutral magistrate."  *Id.,* 468 U.S. at 913.

## *DISCUSSION*

A fair reading of the application and warrant shows no grounds for suppression.  Probable cause is well established.  *See* Dkt. S-267-1.  The following is a partial description of but a portion of the probable cause established:  The affidavit states that FedEx employees had alerted law enforcement concerning narcotics shipments to Gulfport, Florida from San Diego in April 2024, with repeated shipments coming from a San Diego mailing store.  *Id.* at 7.  Controlled delivery of a 41 lb. package of methamphetamine was undertaken, and codefendant Goslin picked up the San Diego-originated shipment.  A subpoena showed that seven additional packages like the controlled delivery had been sent from the same San Diego sender.  Packages had been tracked electronically by the sender, and the address originating the tracking was apartment 601, the subject of the search.  *Id.* at 8–10.  Airline ticket records showed Goslin taking a flight to San Diego in May, 2024.

Details from the instant case were found to be present in an earlier investigative database, going back to 2022–2023. These files showed Pitter was shipping narcotics packages from the same San Diego packing store that was used for the Goslin-bound shipments. *Id.* at 10–12.

In late June 2024, another shipment came from the same San Diego packing store to the address used by Goslin. This was two kilograms of cocaine. Records showed four earlier shipments sent to this address from the same San Diego source. On July 2, 2024, a search of Goslin's storage unit and house in Florida yielded 55 individually packaged bags of methamphetamine, slightly less than a kilogram of heroin, a half kilo of cocaine, fentanyl, and $154,960 in cash. *Id.* at 14. Packages and tote boxes, now empty, evidenced earlier shipments. Database research into an iCloud account yielded proof that a male, whose name appeared to be changing, was conducting multiple flights from San Diego to central Florida. The most recent name used by this person was "Wayne Hammond." This iCloud account also shows flights for Goslin to California. *Id.* at 17–18.

After Goslin was arrested, he confessed in a debriefing July 16, 2024. He identified a California driver's license photo as his source. This license was in the name of "Wayne Hammond" and "Hammond" was a former federal cellmate with Goslin, both being from Jamaica. In prison, Goslin knew this person as "Omar" or "Youngin." Federal prison records show this person's true name to be Omar Pitter,

the defendant/movant here. Goslin stated that Omar sold him multiple shipments from San Diego, and Omar would fly to Tampa to pick up the cash owed, usually around $200,000 per shipment. *Id.* at 21. Goslin's statement about Pitter and Goslin's travel was corroborated by records. *Id.* at 22. Goslin consented to the search of his eight phones, which provide rich corroboration of everything he was saying about Omar. *Id.* at 22–23.

The above discussion is only part of the facts set forth in the very full affidavit. Probable cause existed here. "[T]he totality of circumstances allows a conclusion that there [wa]s a fair probability of finding contraband or evidence at [the] particular location." *United States v. Brundidge,* 1350, 1352 (11th Cir. 1999). The data ties the subject premises to the drug shipments, and Pitter is also linked to the premises and expressly identified as the source of the many shipments, including Pitter's trips to Florida to retrieve the payments.

The Court also notes that the "good faith" exception of *Leon, supra,* would obviously apply, and Movant Pitter does not contend otherwise. The familiar four exceptions to the application of this doctrine,[1] do not apply and are not argued as grounds for suppression.

The motion is denied.

---

[1] *See, generally, United States v. Martin,* 297 1308, 1313 (11th Cir. 2002) (citing *Leon, supra,* 468 U.S. at 923).

DONE and ORDERED, this 8th day of September, 2025.

/s/ *William F. Jung*
William F. Jung
United States District Judge